IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MUSCATINE MALL ASSOCIATES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.   06 C 2422 |
| ) | |
| ) | Judge Robert W. Gettleman |
| MENARD, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Muscatine Mall Associates, LLC, ("Muscatine"), owner of Muscatine Mall, filed suit against defendant Menard, Inc. ("Menard"), a retail home improvement store, involving this court's diversity jurisdiction, 28 U.S.C. §1332, seeking damages for an alleged breach of a lease agreement ("Lease").  Plaintiff demands damages in the amount of $419,173.58, plus continuing common area maintenance ("CAM") charges, interest and late fees allegedly owed under the terms of the Lease.  Defendant has moved to dismiss, arguing that it did not breach the Lease based on a plain and unambiguous reading of the Lease.  For the reasons stated below, defendant's motion to dismiss is denied.

**FACTS**

Plaintiff Muscatine is a Delaware limited liability company with its principal place of business in Chicago, and defendant Menard is a Wisconsin corporation with its principal place of business in Eau Claire.  Plaintiff is the owner of Muscatine Mall, located in Muscatine, Iowa. Defendant is a retail store that specializes in selling home improvement products and lumber with stores throughout the midwestern United States.  In September 1997, defendant entered into a lease

agreement with the then-owner of Muscatine Mall, Tristate Joint Venture, to operate one of its stores in Muscatine Mall. The Lease includes the following relevant terms:

Section 1.1(D).

> "Premises" means Tenant's portion of Landlord's Building shown on Schedule "A" having the following Area:
> Interior Floor Area: 72,000 square feet
> Exterior Floor Area: 130,000 square feet
>
>  *  * * * *

Section 5.1. <u>Rentals Payable</u> ("Rental Clause").

> Tenant covenants and agrees to pay to Landlord as rental ("Rental") for the Premises, the following:
>
> (a) the Annual Basic Rental specified in clause G of Section 1.1; plus
>
> (b) all additional sums, charges or amounts of whatever nature to be paid by Tenant to Landlord in accordance with the provisions of this Lease, whether or not such sums, charges or amounts are referred to as additional rental (collectively referred to as "Additional Rental");
>
> provided, however, that the Annual Basic Rental shall be adjusted proportionately for any Rental Year of more or less than twelve (12) calendar months.
>
> Tenant shall not be required to pay Rental for the Exterior Floor Area.

     * * * *

Section 10.4. <u>Tenant to Share Expense of Common Areas</u> ("CAM Clause").[1]

> Tenant will pay Landlord, as Additional Rental, a share of Landlord's Operating Costs which shall be an amount equal to Fifty Cents ($0.50) (the "Base Amount") per square foot of the Premises, per annum, for the first Rental Year. For all other Rental Years, the Base Amount shall annually increase or decrease in the same proportion as Landlord's Operating costs shall have increased or decreased as compared to the prior year…Failure of Landlord to provide the statement called for hereunder within the time prescribed shall not relieve Tenant from its obligations thereunder.

---

[1] CAM Clauses are commonly found in commercial leases and are assessed to pay for the upkeep of communal areas in commercial developments such as Muscatine Mall.

Section 20.18.

> "This lease and the rights and obligations of the parties hereunder shall be construed in accordance with the laws of the State in which the Shopping Center is located."

After the Lease was signed, and before defendant opened its Muscatine Mall store ("Store"), plaintiff became the owner of Muscatine Mall and succeeded to Tristate's rights and responsibilities under the Lease.

From 1998 through 2004, plaintiff's accountants billed defendant for CAM charges by charging $.50 per square foot, basing its billing calculations only on the Store's interior square footage of 72,000 square feet. In 2005, plaintiff discovered that it had not been including the Store's exterior square footage of 130,000 in defendant's CAM charges. Plaintiff consequently sent defendant revised invoices from the years 1998 through 2004 that sought the difference between the amount of CAM charges allegedly owed under the Lease—CAM charges that included the interior and exterior square footage in the billing calculations—and the amounts already paid by defendant. Defendant refused to pay the revised invoices, prompting plaintiff to notify defendant that it was in default of its obligations under the terms of the Lease.

## **DISCUSSION**

This court has subject matter jurisdiction based on diversity of citizenship and an amount of controversy exceeding $75,000 pursuant to 28 U.S.C. §1332(a)(1). In diversity cases, the court applies the choice-of-law doctrine of the state in which the court sits (in the instant case, Illinois). *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)). Section 20.18 of the Lease contains a choice-of-law provision under which the Lease "shall be construed in accordance with the laws of the State in which the Shopping

3

Center is located." In the instant case, the laws of Iowa apply because Muscatine Mall is located in Iowa, which neither party disputes.

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint, not to rule on its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences favorable to the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir. 1996). The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings, which include the complaint and any exhibits attached thereto. *Thompson v. Illinois Department of Professional Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). In cases involving contracts, the contract will be considered part of the pleadings if it is attached to the complaint. *Baker v. Potter*, 2006 WL 895904, at *3 (7th Cir. Apr. 7, 2006) (citing *Northern Indiana Gun & Outdoor Shows, Inc. v. South Bend*, 163 F.3d 449, 453-54 (7th Cir.1998)). Since plaintiff attached a copy of the Lease to its complaint, it will be considered part of the pleadings.

The dispute in this case centers on whether, as plaintiff argues, the Lease obligates defendant to pay CAM charges based on both the interior and exterior square footage of the Store or whether, as defendant argues, defendant has fulfilled its lease obligations thus far by paying CAM charges to plaintiff based only on the Store's interior square footage. Relying on the language of the CAM Clause, plaintiff alleges that its accountants erroneously underbilled defendant for CAM charges from 1998 through 2004 by excluding the exterior square footage from its billing calculations. Defendant contends that the Rental Clause specifically precludes plaintiff from billing defendant for CAM charges based on the Store's exterior square footage.

4

In contract cases, a motion to dismiss is not appropriate if the contract is facially ambiguous. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992) ("'If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [court] cannot properly determine on a motion to dismiss.'" (quoting *Quake Construction, Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990))). If a contract is unambiguous and plaintiff's claims are unmerited under its terms, dismissal is appropriate. *Jackson National Life Ins. Co. v. Gofen & Glossberg, Inc.*, 882 F.Supp. 713, 718 (N.D.Ill 1995) (holding that dismissal may be appropriate where the allegations of the complaint conflict with the written terms of the contract). Thus, this court must decide whether the Lease is facially ambiguous. In making such a determination, the court applies the contract interpretation principles of the state whose laws govern the case. *Id.* at 718-19. In the instant case, Iowa's contract interpretation principles apply.

The key to contract interpretation under Iowa law is to ascertain the intent of the contracting parties at the time the contract was made. *Stockton Realty Co. v. Muscatine County Solid Waste Management Agency*, 2004 WL 1902518, at **5 (Iowa App. Aug. 26, 2004). The parties' intent is governed by what the language of the contract itself says. *Id.* The Iowa court must give effect to the contractual language as a whole according to its commonly accepted and ordinary meaning. *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999); *Stockton Reality*, 2004 WL 1902518, at **5. The disputed language should not be read in isolation, but should instead be interpreted in the context in which it is used. *Hartig Drug*, 602 N.W.2d at 798; *Stockton Reality*, No. 03-1331, 2004 WL 1902518, at **5. The agreement should be interpreted with the assumption that all of the language is necessary; an interpretation which gives a reasonable effective meaning to all terms is preferable to an interpretation which leaves a part of the contract unreasonable or meaningless.

5

*Acme Elec., Inc. v. Tempest Co.*, 2003 WL 24054813, at *5-6 (Iowa Dist. Jan. 28, 2003) (citing Iowa Civil Jury Instruction 2400.5); *see also Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 26 (Iowa 1978).

Applying these rules of construction to the Lease, the Rental Clause stipulates that "Rental" shall include not only the Annual Basic Rental but also all Additional Rental (the CAM Clause directs that CAM charges are regarded as Additional Rental), and that defendant "shall not be required to pay Rental for the Exterior Floor Area." Defendant argues that because Additional Rental—which includes CAM charges—is included in Rental and because defendant is not required to pay Rental for the Exterior Floor Area, the Rental Clause unambiguously limits its rental obligation to CAM charges based solely on the Store's interior square footage.

Read in isolation, the Rental Clause does not permit the Store's exterior square footage to be included in its CAM charge calculations. As stated, however, Iowa's rules of contract construction require this court to look at the Lease as a whole and to interpret the Lease in a way that gives meaning to all the contractual language and renders no term meaningless.

Defendant's argument would compel this court to virtually ignore other portions of the Lease, in particular, the CAM Clause and the definition of "Premises" under Section 1.1(D). The CAM Clause stipulates that defendant is responsible to plaintiff for a share of plaintiff's operating costs, which is an amount equal to $.50 per square foot of the Premises. Section 1.1(D) defines Premises as including both the Interior and Exterior Floor Area of the Store. Further, Section 1.1(D) directs that the Premises "means Tenant's portion of Landlord's Building shown on Schedule 'A'…" Schedule A consists of two pages: the first page designates the Store's Exterior Floor Area and the

6

second page designates the Store's Interior Floor Area. This is further evidence to the court that the definition of "Premises" was meant to include both the Interior and Exterior Floor Area.

While defendant cites numerous cases in its brief to support its motion to dismiss, they are all cited for the same holding: where a contract shows unambiguously that the relief prayed for is not merited, a dismissal is appropriate. Defendant does not acknowledge, however, that all the cases it cites are premised on a finding by those courts that the contract was unambiguous. It is precisely this finding—that the Lease is unambiguous—that defendant must prove. Defendant's only response to plaintiff's argument is an unsupported assertion that the contractual language of the Lease is unambiguous and that plaintiff's interpretation of the Lease is unreasonable. None of defendant's cited cases and nothing in defendant's argument serves to discredit plaintiff's interpretation of Section 1.1(D) and the CAM Clause in a way that would justify this court in granting defendant's motion to dismiss.

The court finds that both parties' interpretations of the Lease are facially reasonable and in direct conflict with the other. Where two contractual provisions are in conflict, a contract is deemed facially ambiguous. *Rick v. Sprague*, 706 N.W.2d 717, 723 (Iowa 2005) ("A term is ambiguous if, 'after all pertinent rules of interpretation have been considered,' 'a genuine uncertainty exists concerning which of two reasonable interpretations is proper.'" (citing *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001))); *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999). Accordingly, the court finds that the contract is ambiguous on its face. Because the court is unable to resolve the contractual ambiguity based on the pleadings alone, a dismissal would be improper at this stage.

## **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is denied. Defendant is directed to answer the complaint on or before September 1, 2006. The parties are directed to propose and file a joint status report using the court's form on or before September 6, 2006. This matter is set for a report on status September 13, 2006, at 9:00 a.m.

**ENTER:** **August 14, 2006**

_____
**Robert W. Gettleman**
**United States District Judge**